UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-1718 (JFB) (WDW)

_____

KALLIOPE R., A MINOR CHILD, BY HER PARENTS, DR. IRENE D. AND DR. GEORGE R.; SPIRIDONNA D., A MINOR CHILD, BY HER PARENTS, DR. IRENE D., AND DR. GEORGE R.; PETER JOHN S., A MINOR CHILD, BY HIS FATHER, PETER S.; ANDREW M., A MINOR CHILD, BY HIS PARENTS, DOROTHY M. AND LOUIS M.; AND SCHOOL FOR LANGUAGE AND COMMUNICATION DEVELOPMENT,

Plaintiffs,

VERSUS

NEW YORK STATE DEPARTMENT OF EDUCATION,

Defendant.

_____

**MEMORANDUM AND ORDER**
June 1, 2010

_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs, parents suing on behalf of four minor children and the special education school the children attend, bring this action pursuant to the Individuals with Disabilities Education Act ("IDEA") and the Rehabilitation Act of 1973. They seek a declaratory judgment that defendant, the New York State Education Department ("NYSED"), has unlawfully promulgated a policy prohibiting the use of a particular student-teacher ratio. They also seek to permanently enjoin NYSED from carrying out this alleged policy, as well as attorneys' fees and costs. NYSED has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' claims. For the reasons set forth in the following memorandum and order, the Court denies the motion in its entirety.

I. BACKGROUND

A. Factual Allegations

The following facts are taken from the complaint ("Compl."), which the Court assumes to be true for the purposes of deciding this motion and construes in the light most favorable to plaintiffs, the non-moving party.

Plaintiff School for Language and Communication Development ("SLCD") operates non-profit, private schools serving children with handicapping conditions. (Compl. ¶ 17.) An SLCD school for pre-school through eighth graders is located in Glen Cove, New York, and a school for sixth through twelfth graders is in Woodside, New York. (Compl. ¶ 18.) Plaintiffs Dr. Irene D. and Dr. George R.; Peter S.; and Dorothy M. and Louis M. ("the individual plaintiffs") bring this action on behalf of their children with disabilities, each of whom attends SLCD. (Compl. ¶¶ 2; 14-16.)

Defendant, the New York State Department of Education ("NYSED" or "defendant"), is responsible overseeing the provision of educational services to disabled school-age students in New York State. (Compl. ¶ 19.)

As will be discussed in detail *infra*, the Individuals with Disabilities Education Act ("IDEA") entitles disabled children, such as the children of the individual plaintiffs, to a "free and appropriate public education." (*See* Compl. ¶ 2). Pursuant to IDEA and implementing New York state statutes, a Committee on Special Education ("CSE") develops an Individualized Education Program ("IEP") for a disabled child to ensure that the child receives such an education. (Compl. ¶¶ 21, 23-26.)

In 1985, SLCD's pre-school program began combing two groups of students with a "6:1:1" student-teacher staffing ratio—meaning a class with six students, one teacher, and one teacher's aide. (*See* Compl. ¶¶ 58-59.) The combined class is known as a "12:2:2" or "6:1:1S" class.[1] (Compl. ¶¶ 58-61.) In 1994, SLCD requested that NYSED approve use of the 12:2:2 class ratio for SLCD's school-age program. (Compl. ¶ 63.) According to plaintiffs, David A. Payton, an NYSED official, responded in a letter that NYSED approval was not required. Specifically, the letter stated

> [T]here is flexibility within existing regulations and your approved 6:1:1 student/staff option to implement a 12:2:2 instructional model by simply combining two 6:1:1 classes into a 12:2:2 instructional configuration. Local Committees on Special Education (CSE) would [need to] recommend on the student's Individualized Education Program (IEP) at 6:1:1 class with the IEP annotated to indicate that two 6:1:1 classes would be combined for instructional purposes appropriate to the individual needs of the students in the class. If a student's IEP recommended a 12:2:2 student/staff ratio, there would be no disruption in SLCD's program. Students would be referred back to the CSE and remain in their current class pending the amendment of the IEPs . . . . There is no further approval necessary from the Department [of Education].

(Compl. ¶¶ 64-65.) In accordance with Payton's guidance, parents of disabled children and disabled children's CSEs have "routinely recommended," as part of the IEP development process, that children be placed in 12:2:2 classes at SLCD. (Compl. ¶ 66.)

---

[1] For brevity's sake, the Court will hereinafter refer to this class size as "12:2:2."

In April 2007, Bruce Schachter, an SED Regional Associate, wrote a letter to SLCD that appeared to tell SLCD that it could not use 12:2:2 classes at its Glen Cove school. (Compl. ¶ ¶ 69-70.) SLCD appealed the April 2007 letter to the Commissioner of the Department of Education. (Compl. ¶ 71.) The appeal was dismissed for lack of jurisdiction. (Compl. ¶ 72.) In May 2007, however, Schachter wrote back to SLCD and stated that, "as long as" a student's IEP indicated that two 6:1:1 classes could be combined for instructional purposes, the school could continue "'to combine 6:1:1 classes on an individual basis.'" (Compl. ¶ 75.)

A few months after SLCD received Schachter's letter, NYSED began contacting children's CSEs and told them to stop placing students, including the children of the individual plaintiffs in this case, in 12:2:2 classes. (Compl. ¶ 77.) Additionally, NYSED Regional Associate Susan Bandini told SLCD that each 6:1:1 class would require its own classroom and that 6:1:1 classes could not be combined with each other for the entire school day. (Compl. ¶¶ 77-78, 83-84.) To provide each 6:1:1 class with its own classroom, SLCD would need to spend no less than $600,000.00 modifying its buildings. (Compl. ¶ 80.)

B. Procedural History

Plaintiffs filed the complaint in this action on April 27, 2009. Each of the individual plaintiffs alleges that their children's IEP's recommended a 12:2:2 class size and/or that they were assured by their children's CSEs that the children would be educated in a 12:2:2 class. (*See* Compl. ¶¶ 99-101; 106-08; 113-15; 120-21). Plaintiffs claim that defendants, by promulgating a policy prohibiting use of the 12:2:2 class size, violated IDEA and the Rehabilitation Act. They seek a declaratory judgment, permanent injunctions, costs, and attorneys' fees.

In May 2009, defendant notified the Court that it intended to move to dismiss the complaint. The Court set a briefing schedule, and both sides fully briefed the motion. Defendants argue that plaintiffs (1) have failed to exhaust their administrative remedies; (2) have failed to state a claim under IDEA; (3) lack standing under the Rehabilitation Act; and (4) have failed to state a claim under the Rehabilitation Act.

Thereafter, the scheduled oral argument on the motion was adjourned several times based on the Court's schedule and on the parties' representations that they were attempting to settle the matter. (*See* Docket 14-17.) These negotiations were unsuccessful, and oral argument took place on May 26, 2010.

II. STANDARD OF REVIEW

Defendant has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to

3

state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court recently clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), setting forth a two-pronged approach for courts deciding a motion to dismiss. The Court instructed district courts to first "identify[ ] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. Though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 1949 (quoting and citing *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

III. DISCUSSION

Defendant asserts that the complaint must be dismissed because plaintiffs have failed to exhaust their administrative remedies, have failed to state a claim for which relief can be granted, and, for their Rehabilitation Act claim, lack standing. As set forth below, the Court disagrees.

A. IDEA Claim

1. The IDEA Statute

The purpose of IDEA is to provide children with disabilities access to a "free appropriate public education." 20 U.S.C. §§ 1400(c), (d). In passing IDEA, "Congress sought primarily to identify and evaluate handicapped children, and to provide them with access to a free public education." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 200 (1982). "Under the educational scheme of the IDEA (previously known as the Education of the Handicapped Act), parents of students with disabling conditions are guaranteed both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate. Parents are specifically entitled to request a due process hearing in order to present complaints as to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education." *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008) (citation and quotations omitted). The primary mechanism of the statute is the design and implementation of an Individualized Education Plan ("IEP") to address each student's particular disabilities. 20 U.S.C. § 1414. The IEP sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation

4

of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving post-secondary school goals and provisions for transitional services. 20 U.S.C. § 1414(d)(1)(A). The IEP is developed by a team that includes the child's parents, teachers, and representatives of the local education agency. 20 U.S.C. § 1414(d)(1)(B). In New York State, this team is known as a Committee on Special Education ("CSE"). *See* N.Y. Educ. Law § 4410-b(1)(c). As a general rule, IDEA requires that, at least once a year, the CSE review the IEP and make any necessary revisions. *See* 20 U.S.C. § 1414(d)(4)(A)(i). In order to receive federal funding, a state educational agency, such as defendant here, must implement a policy to assure that children with disabilities receive a FAPE. *See* 20 U.S.C. § 1412(a)(1).

2. Failure to Exhaust

Defendant argues that the plaintiffs' IDEA claim must be dismissed because, *inter alia*, plaintiffs have failed to exhaust their administrative remedies. Defendants also argue that plaintiffs' Rehabilitation Act claim is subject to the IDEA exhaustion requirement. Although exhaustion is generally required under IDEA and the plaintiffs' Rehabilitation Act claim in fact also falls within the IDEA exhaustion requirement, the Court concludes that plaintiffs allege the kind of systemic violations for which exhaustion is deemed futile, and, thus, dismissal on this ground is unwarranted.

a. IDEA Exhaustion Generally

Defendants argue that the complaint should be dismissed because plaintiffs have failed to exhaust their administrative remedies. It is well settled that, prior to bringing a suit in federal court under IDEA, plaintiffs must exhaust all available administrative procedures. *See* 20 U.S.C. § 1415(i)(2); § 1415(l).[2] In the State of New York, these include an impartial hearing and an appeal of the hearing officer's decision to a state review officer. 20 U.S.C. §§ 1415(f), (g); 8 N.Y.C.R.R. § 200.5. Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child." 20 U.S.C. § 1415(b)(6)(A).

"[T]he primary reason for an exhaustion requirement is to utilize the expertise of administrators" who are familiar with resolving issues relating to the education of disabled students. *SJB v. N.Y.C. Dep't of Educ.*, No. 03-CV-6653 (NRB), 2004 U.S. Dist. LEXIS 13227, at *14 (S.D.N.Y. July 14, 2004) (citing *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487) (2d Cir. 2002)) ("The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrator's [sic]

---

[2] In *Coleman v. Newburgh Enlarged City School District*, 503 F.3d 198 (2d Cir. 2007), the court noted that Second Circuit precedent had, until recently, described the exhaustion requirement as jurisdictional. The court explained that more recent Second Circuit decisions had, in light of Supreme Court case law, become "equivocal" as to whether exhaustion was a jurisdictional requirement or an affirmative defense. *See* 503 F.3d at 203-04. The court declined to decide the issue. *See id. But see id.* at 207 (Straub, J. concurring) (contending that exhaustion requirement is jurisdictional). Here, the parties do not appear to dispute that the exhaustion issue is properly raised in a Rule 12(b)(6)—as opposed to Rule 12(b)(1)—motion.

5

expertise in the area and promptly resolve grievances.")) and *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 791 (2d Cir. 2002)). Even in instances where an administrative hearing and appeal are unsuccessful in resolving a dispute, such procedures "will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court." *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112-13 (2d Cir. 2004) (citing *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir. 1981)).

Furthermore, the IDEA statute requires plaintiffs with *any* claims related to the education of disabled children, whether brought under IDEA or another statute (e.g., the Rehabilitation Act), to exhaust the administrative remedies available under IDEA prior to initiating a federal lawsuit. 20 U.S.C. § 1415(l) ("Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter." (citations omitted)); *Polera*, 288 F.3d at 481 ("[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)."); *accord J.S.*, 386 F.3d at 112; *see also Cave*, 514 F.3d at 248 ("The language of Section 1415(l) of the IDEA is sufficiently broad and encompasses complaints asserted under *any* federal statute, as long as they seek relief available under the IDEA." (emphasis in original)); *Hope v. Cortines*, 872 F. Supp. 14, 17 (E.D.N.Y.), *aff'd*, 69 F.3d 687, 688 (2d Cir. 1995) (holding that ADA, Section 1983 and Section 2000d claims are subject to IDEA's exhaustion requirement).

In this case, plaintiffs bring both a claim under IDEA and a claim under the Rehabilitation Act. Both claims are based on NYSED's allegedly depriving the individual plaintiffs' children of their right to free and appropriate public education. Additionally, the Rehabilitation Act claim seeks relief— specifically equitable relief, attorneys' fees, and costs—that is also available under IDEA. *See* 20 U.S.C. § 1415(i)(2)(C)(iii) (in action brought under IDEA, court "shall grant relief as the court determines is appropriate"); 20 U.S.C. § 1415(i)(3)(B)(i) (in action brought under IDEA, court "may award reasonable attorneys' fees as part of the costs" to a prevailing party); *Cave*, 514 F.3d at 246-47 (finding claims brought under Rehabilitation Act, Americans with Disabilities Act, and 42 U.S.C. § 1983 subject to IDEA's exhaustion requirements where those claims sought, *inter alia*, injunctive relief, attorneys' fees, and court costs); *J.S.*, 386 F.3d at 112 ("As the district court correctly noted, the students asserted a section 504 Rehabilitation Act claim and a section 1983 claim that both seek to ensure a free appropriate public education, thus subjecting both to the IDEA exhaustion requirement."); *Polera*, 288 F.3d at 486 (stating that claims for declaratory and injunctive relief and attorneys' fees "appear[ed] to be available under the IDEA"). Thus, because the Rehabilitation Act claim relates to the children's education and seeks relief available under IDEA, it too is subject to IDEA's exhaustion requirement.

b. Futility Exception to Exhaustion Requirement

(1) Standard

However, a party may be excused from the IDEA's exhaustion requirement where exhaustion would be futile because the administrative procedures available do not provide adequate remedies. *Polera*, 288 F.3d at 488; *Heldman v. Sobol*, 962 F.2d 148, 158-59 (2d Cir. 1992). Plaintiffs bear the burden of proving that it would have been futile for them to pursue relief through administrative procedures. *J.S.*, 386 F.3d at 112 ("The students bear the burden of proof that exhaustion would be futile.").

On the basis of the complaint, the Court must determine whether plaintiffs' claims meet either of two potential bases for "futility" that would excuse them from IDEA's exhaustion requirement. The potential bases for futility are: (1) that defendants "failed to implement services that were specified or otherwise clearly stated in an IEP," *Polera*, 288 F.3d at 489, or (2) that the problems alleged are "systemic violations" that cannot be addressed by the available administrative procedures. *J.S.*, 386 F.3d at 113 ("[T]his Court has previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations." (collecting cases)). The Second Circuit has also instructed courts "to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *Id.* (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)).

(2) Application

In the instant case, plaintiffs contend that exhaustion is excused. They focus their argument on the second potential basis for futility: that defendants have engaged in systemic violations that administrative procedures cannot remedy. (*See* Compl. ¶¶ 125-33; Pls.' Opp., at 9-16).

The systemic violations exception applies where a plaintiff challenges "the framework and procedures for assessing and placing students in appropriate educational programs . . . or [where the] nature and volume of complaints [are] incapable of correction by the administrative hearing process." *J.S.*, 386 F.3d at 114. For example, in *J.S.*, the complaint alleged, that the defendant school district, *inter alia*, failed to "perform timely evaluations and reevaluations of disabled children"; failed "to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children"; and failed "to perform legally required responsibilities in a timely manner." *Id.* at 115. The court found exhaustion futile because the problems alleged did not involve issues concerning individual children, "where the remedy is best left to educational experts." *Id.* at 114-15; *see also Handberry v. Thompson*, 436 F.3d 52, 61 (2d Cir. 2006) (exhaustion futile because "the plaintiffs challenge the DOE's and DOC's actions with respect to providing educational services to all entitled inmates at Rikers Island"); *Heldman*, 962 F.2d at 159 (exhaustion not required where complaint based on allegation that state hearing officer selection process "violates the mandate of IDEA"); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 756-57 (2d Cir. 1987) (finding exhaustion not required where complaint alleged that school district failed to provide a psychologist and to conduct necessary evaluations); *J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.*, 830 F.2d 444, 446 (2d Cir. 1987) (exhaustion not required because "wrongdoing complained of is inherent in the program . . . and is not

7

directed against any specific child"); *Scaggs v. N.Y. State Dep't of Educ.*, No. 06-CV-0799 (JFB) (VVP), 2007 U.S. Dist. LEXIS 35860, at *28 (E.D.N.Y. May 16, 2007) (finding exhaustion not required because plaintiffs alleged "complete inadequacy of the educational environment at [school]"). *But see Riley*, 668 F.2d at 641-42 (finding exhaustion required in challenge to state policies regarding classification of children as "handicapped" and placement of children in residential schools). In sum, under the systemic violations exception, exhaustion is deemed futile when the conduct alleged to have violated IDEA affected all students in a given program.

Conversely, exhaustion is required when the plaintiff's allegations depend on individual characteristics, such as the sufficiency of a child's IEP. *See, e.g.*, *J.S.*, 386 F.3d at 114 (noting "the importance of exhaustion in 'textbook' cases presenting issues involving individual children . . . ."). For example, in *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240 (2d Cir. 2008), a CSE refused a deaf student's request to bring a service dog to school. *See* 514 F.3d at 243-44. The student's parents brought suit on his behalf without exhausting their administrative remedies. *Id.* at 244. The Second Circuit held that exhaustion was required because the complaint involved an individual student's request, and there was no allegation "of a system-wide violation of IDEA" or a "structurally tainted" administrative process. *Id.* at 250.

In this case, plaintiffs are not challenging the adequacy of a particular IEP or IEPs. Instead, they allege that NYSED has adopted a policy that violates IDEA by circumventing the IEP development process. (*See* Compl. ¶¶ 136-38.) In particular, plaintiffs contend that the NYSED's alleged policy deprives parents of their rightful place in that process. (*See id.*) Thus, the focus of this case will be on NYSED's alleged policy, not whether a particular IEP is appropriate for a particular student. *Cf. Bougades v. Pine Plains Cent. Sch. Dist.*, No. 09-4037-cv, 2010 WL 1838710, at *1 (2d Cir. May 10, 2010) (finding "no basis for deeming the relevant issues unexhausted" when "the record is replete with discussion of M.B.'s need for homework modification and writing intervention"). Additionally, it does not appear that the Court will need to speculate as to whether the 12:2:2 class size would be recommended as appropriate for a given child or children. The complaint states that CSEs have already recommended the 12:2:2 placement for the children of individual plaintiffs and/or told the plaintiffs that the children were being placed in a 12:2:2 class. (*See* Compl. ¶¶ 97-124.) *Cf. Riley*, 668 F.2d at 642 (requiring exhaustion in challenge to policy regarding placement in residential schools because, *inter alia*, there was no claim that any plaintiff actually needed residential placement). Additionally, resolving how the state's policy comports with IDEA statute will not require the specialized educational expertise that the administrative process could provide. *See J.S.*, 386 F.3d at 113 (noting that, in determining whether exhaustion is futile, courts should consider expertise that administrative review would provide); *cf. Riley*, 668 F.2d at 641 (stating challenge to state policy regarding classification of handicapped children involved an area "where experts love to revel" and requiring exhaustion). Finally, although the plaintiffs are not claiming to have exhausted their administrative remedies, it is worth noting that the commissioner of NYSED previously dismissed SLCD's appeal of this policy in 2007. This fact further supports plaintiffs' argument that the administrative process is unable to resolve (and unable to meaningfully

8

assist in resolving) plaintiffs' claims. Therefore, the Court finds that plaintiffs have established that exhaustion would be futile.

### 3. Failure to State a Claim

Defendant also argues that the complaint should be dismissed for failure to state a claim for which relief can be granted. As set forth below, the Court disagrees. Plaintiffs' complaint states plausible allegations that defendant has violated the procedural and substantive requirements of IDEA.

#### a. Standard

In determining whether a State has deprived children of free and appropriate public education mandated by IDEA, courts examine whether the State has complied with IDEA's procedural and substantive requirements. *See Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 381 (2d Cir. 2003) (citing *Rowley*, 458 U.S. at 206-07). "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more." *Rowley*, 458 U.S. at 207.

#### (1) Procedural Inquiry

The procedural inquiry asks if the State has complied with the procedures set forth in IDEA. *See Grim*, 346 F.3d at 381. Plaintiffs argue that IDEA's procedures require that parents have a "meaningful opportunity to participate" in the IEP process and that NYSED's "predetermination" that 12:2:2 classes could not be used for the full school day deprived parents of this meaningful opportunity. (*See* Pls.' Opp. at 19-21 (quoting Compl. ¶¶ 77-78, 91, 92.)) If an IEP "is predetermined by the state," and not based on an individualized assessment of a given child, "it is procedurally defective." *E.G. and M.G. v. City Sch. Dist. of New Rochelle*, 606 F. Supp. 2d 384, 388 (S.D.N.Y. 2009) (citing *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 857-58 (6th Cir. 2004)).

In *Deal*, for example, the parents of an autistic child taught the child using a form of therapy known as "one-on-one applied behavioral analysis," or "ABA." 392 F.3d at 845-46. The parents eventually requested that the school district, pursuant to IDEA, fund the ABA therapy. *See id.* at 846. The school district repeatedly refused to even discuss the possibility of providing ABA therapy, telling the parents that the "powers that be" were not permitting the implementation of such therapy. *Id.* at 855-56. The court found that, because the school district never even considered ABA therapy as a "viable option," it deprived the parents of a meaningful opportunity to participate in the IEP process. *Id.* at 858-59; *see also Berry v. Las Virgenes Unified School Dist.*, No. 08-55693, 2010 WL 882866, at *1 (9th Cir. Mar. 11, 2010) (affirming district court's finding of predetermination where "the decision to transfer [student] from his private placement to the district had been made before the [IEP] meeting was held."); *T.P. and S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 253-54 (2d Cir. 2009) (citing *Deal* but declining to find predetermination because of evidence that school district had considered parents' recommendations).

#### (2) Substantive Inquiry

In the substantive inquiry, the Court asks whether the IEP(s) "'developed through the Act's procedures [are] reasonably calculated to enable the child to receive educational benefits.'" *Grim*, 346 F.3d at 381 (quoting *Rowley*, 458 U.S. at 206-07). The state is not required to "furnish 'every special service necessary to maximize each handicapped

9

child's potential.'" *Cerra v. Pawling Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (quoting *Rowley*, 458 U.S. at 207). A child's IEP, however, must be "'likely to produce progress, not regression'" and must "afford[ ] the student with an opportunity greater than mere 'trivial advancement.'" *Id.* (quoting *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1994)).

b. Application

In this case, the complaint alleges that NYSED instructed CSE members to cease recommending the 12:2:2 class size. (*See* Compl. ¶¶ 77, 82.) Accepting this fact as true, which the Court must for purposes of a motion to dismiss, the complaint states a plausible claim that, similar to *Deal*, the state has promulgated a policy that prevents CSE members from even considering that a 12:2:2 class size might be appropriate in at least some cases. In particular, plaintiffs may be able to demonstrate that such a policy could constitute a "predetermination" that is a procedural violation of IDEA. Therefore, the complaint states a plausible claim that defendant has failed to comply with IDEA's procedural requirements.

Additionally, while the gravamen of the complaint concerns NYSED's interference with IDEA's procedures, the complaint also alleges that the 12:2:2 student-teacher ratio is necessary to allow students "to make a reasonable rate of progress toward achievement of the goals on their IEP." (*See* Compl. ¶ 137.) The complaint also claims that NYSED has directed CSEs "to change IEP's . . . for reasons other than the unique needs of children" and that NYSED has interfered with children's access to SLCD, even though the CSEs have determined "that SLCD was the appropriate educational placement." (*See* Compl. ¶¶ 139-41.) These allegations state a plausible claim that NYSED's interference with the IEP process has hampered the progress of the individual plaintiffs' children and the other children attending SLCD, and thereby substantively violated IDEA.[3]

---

[3] At oral argument, defendant's counsel argued that plaintiffs' claim improperly intrudes on NYSED's ability to promulgate policies and standards for the education of children and that a local educational agency—not the state education department—is the proper defendant in an IDEA case. This argument is without merit given the circumstances here. Of course, courts have dismissed cases against state educational agencies in which plaintiffs sought review of an administrative decision regarding a particular IEP development process. *See, e.g.*, *B.J.S. v. State Education Dept.*, - - - F. Supp. 2d - - -, 2010 WL 1172598, at *10 (W.D.N.Y. Mar. 23, 2010) ("[T]he controversy over the propriety of the IEP and whether it deprives the student of an FAPE remains one between the student, or, as here, the student's parents, and the local educational agency because, under the Act, the primary responsibility for formulation and implementation of an FAPE and IEP is that of the relevant educational agency, in this case the School District, not State Defendants." (collecting cases)); *see also C.B. v. Bd. of Educ. of Syosset School Dist.*, 96-CV-5752 (FB), 1998 WL 273025, at *4 (E.D.N.Y. Jan. 15, 1998) (explaining that "broad and conclusory allegations" that a state education department "has failed to meet its statutory responsibilities do not state a claim under the IDEA"). Here, conversely, the complaint makes particularized allegations regarding a policy alleged to have been affirmatively promulgated by NYSED. (*See, e.g.*, Compl. ¶¶ 77, 82.) Also as noted above, the adequacy of a particular IEP development process is not at issue. Therefore, NYSED is a proper defendant in this action, which challenges a NYSED policy that allegedly interferes with the IEP development process for disabled students in a systemic manner. *See,. e.g.*, *Quatroche v. East*

In sum, plaintiffs have adequately pled a plausible claim that defendant's actions have violated IDEA.

### B. Rehabilitation Act Claim

Defendant has also moved to dismiss plaintiffs' Rehabilitation Act claim.

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits discrimination against "otherwise qualified" disabled individuals on the basis of a disability. Although Rehabilitation Act claims are often brought in conjunction with IDEA claims, the two statutes serve somewhat different purposes. IDEA requires states to provide special education to qualified students; the Rehabilitation Act assures equal treatment of the disabled and the non-disabled. *J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 70 (2d Cir. 2000); *P.C. v. McLaughlin*, 913 F.2d 1033, 1041 (2d Cir. 1990); *see also Doe v. Pfrommer*, 148 F.3d 73, 83 (2d Cir. 1998) (affirming district court's grant of summary judgment to defendants on Rehabilitation Act claim because plaintiff sought "to challenge . . . not illegal discrimination against the disabled, but the substance of services provided to him . . . .").

### 1. Standing

As an initial matter, NYSED argues that, to bring a claim under Section 504 of the Rehabilitation Act, plaintiff SLCD must "assert standing as an individual with a disability, which it clearly cannot." (Def.'s Mem. of Law, at 15.). As set forth below, the Court disagrees.

Although the Rehabilitation Act prohibits discrimination against "individual[s] with a disability," *see* 20 U.S.C. § 794(a), the Act's remedies extend "to 'any person aggrieved' by the discrimination of a person on the basis of his or her disability." *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997), *recognized as superseded on other grounds by Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 171 (2d Cir. 2001) (quoting 29 U.S.C. § 794a(a)(2)). To have standing, a Rehabilitation Act plaintiff need only satisfy the Article III standing requirements of injury-in-fact, causation, and redressability. *See id.* at 46-47; *see also Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009) ("[W]e have held that . . . Rehabilitation Act actions are not subject to any of the prudential limitations on standing that apply in other contexts."). Thus, in *Innovative Health*, the Second Circuit concluded that a drug and alcohol treatment center had standing under the Rehabilitation Act because the center

---

*Lyme Bd. of Educ.*, 604 F. Supp. 2d 403, 412 (D. Conn. 2009) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA, as the state defendants acknowledge."); *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001); *see also M.T.V. v. Perdue*, No. Civ.A. 1:03CV0468-CA, 2004 WL 3826047, at *10 (N.D. Ga. Feb. 3, 2004) ("The IDEA regulations clearly indicate that where a state receives funding under the IDEA, both the state and the state educational agency are subject to the statute's requirements . . . . However, where the action involves an administrative appeal pursuant to 20 U.S.C. § 1415 and where the ALJ's decision is not based on a particular state policy, plaintiffs lack standing to join the state, the state educational agency, and their agents and officers in that appeal."). *See generally Jose P. v. Ambach*, 669 F.2d 865, 870-71 (2d Cir. 1982) (explaining that state education commissioner, in official capacity, could be proper defendant in suit under predecessor statute to IDEA alleging procedural deficiencies in system for evaluating and placing disabled children).

alleged it had been injured by discrimination against its disabled clients. *See id.* at 46-48. Similarly, in this case, SLCD contends that it has incurred over $22,000.00 in expenses as a result of the NYSED's alleged policy. (*See* Compl. ¶ 81.) Therefore, SLCD has standing to sue under the Rehabilitation Act.

### 2. Failure to State a Claim

Defendant also argues that the complaint fails to state a Rehabilitation Act claim.

#### a. Standard

A prima facie violation of Section 504 of the Rehabilitation Act occurs when someone who is (i) disabled and (ii) "otherwise qualified" to participate in an offered activity or to enjoy the activity's benefits (iii) is "excluded from participation or enjoyment "solely by reason of his or her disability" and (iv) the activity receives federal financial assistance. *See* 29 U.S.C. § 794; *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009); *Romano v. SLS Residential, Inc.*, 246 F.R.D. 432, 440 (S.D.N.Y. 2007). Thus, unlike IDEA, Section 504—by requiring that the plaintiff show exclusion "by reason of his or her disability"—requires the plaintiff to make some showing of discrimination.

"Since Section 504 relief is conditioned on a showing of discrimination, it requires something more than proof of a mere violation of IDEA—i.e., more than a faulty IEP." *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Central School Dist.*, 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005). The "something more" necessary to plead a plausible discrimination claim can be established by showing bad faith or gross misjudgment by the defendant. *See id.* ("[I]ntentional discrimination may be inferred when a school district acts with gross negligence or reckless indifference in depriving a child of access to a FAPE."); *R.B. ex rel. L.B. v. Bd. of Educ. of City of N.Y.*, 99 F. Supp. 2d 411, 419 (S.D.N.Y. 2000) ("In the special education context, courts have held that a plaintiff must demonstrate more than an incorrect evaluation or substantively faulty IEP to establish liability; a plaintiff must show that defendants acted with bad faith or gross misjudgment."); *Wegner v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997) ("[S]omething more than a mere violation of the IDEA is necessary in order to show a violation of [the Rehabilitation Act] in the context of educating children with disabilities, i.e., a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment.").

#### b. Application

NYSED argues that plaintiffs have not adequately alleged bad faith or gross misjudgment. As set forth below, the Court disagrees.

Gross misjudgment or bad faith may be found when a defendant takes action to provide a disabled student with fewer services than had previously been deemed necessary. *See Gabel*, 368 F. Supp. 2d at 336 (finding that a school district's recommendation that a student should be assigned to a program with an 8:1:1 student-teacher ratio even though the student's CSE had recommend a program with a 12:1:1 ratio "may in itself constitute the type of gross negligence or reckless indifference Section 504 is meant to address"); *BD v. DeBuono*, 130 F. Supp. 2d 401, 439 (S.D.N.Y. 2000) (denying summary judgment on Rehabilitation Act claim because "[p]laintiffs have assembled evidence from which a finder of fact could conclude that defendants were aware of the benefits of a larger number of

hours of ABA therapy and intentionally withheld more than ten hours from those plaintiff children for whom a greater number of hours was a necessity."). Here, plaintiffs allege that NYSED, despite the fact that students' CSEs had recommended the 12:2:2 class size, instituted a policy prohibiting use of that class size. (*See, e.g.*, Compl. ¶¶ 82, 99, 106, 113, 120-21.) As such, plaintiffs have stated a plausible claim that NYSED has acted with gross misjudgment, and plaintiffs' Rehabilitation Act claim survives the motion to dismiss.

## IV. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss is denied in its entirety. The parties shall begin discovery at the direction of Magistrate Judge Lindsay.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 1, 2010
Central Islip, NY

\* \* \*

The attorneys for plaintiffs are Farrell Fritz, P.C. by James M. Wicks and Jonathan Kashimer, 1320 RXR Plaza, Uniondale, New York 11556. The attorney for defendant is Andrew M. Cuomo, Attorney General of the State of New York, by Susan M. Connolly, 300 Motor Parkway, Suite 205, Hauppauge, New York 11788.